## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELLY HUGHES, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN INC., et al., | : | No. 11-5543 |
|     Defendants. | : | |
| - - - - - | | |
| NANCY MORENO, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN INC., et al., | : | No. 11-5544 |
|     Defendants. | : | |
| - - - - - | | |
| ANDREA BOWEN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN INC., et al., | : | No. 11-5545 |
|     Defendants. | : | |
| - - - - - | | |
| MARY JO WALL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN INC., et al., | : | No. 11-5546 |
|     Defendants. | : | |
| - - - - - | | |
| AMY DORAN, et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN INC., et al., | : | No. 11-5547 |
|     Defendants. | : | |
| - - - - - | | |

| | | |
|---|---|---|
| **MARILYN APPLE, et al.,** | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5548 |
| Defendants. | : | |
| | - - - - - | |
| **LISA CROYLE,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5549 |
| Defendants. | : | |
| | - - - - - | |
| **TERRY REESE,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5550 |
| Defendants. | : | |
| | - - - - - | |
| **PATRICIA HOLK,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5551 |
| Defendants. | : | |
| | - - - - - | |
| **MICHELLE HOBBS** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5552 |
| Defendants. | : | |
| | - - - - - | |

| | | |
|---|---|---|
| **COLLEEN GRIGSBY, et al.,** | : | |
|         Plaintiffs, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5553 |
|         Defendants. | : | |
| - - - - - | | |
| **CHANTE NEWMAN,** | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5554 |
|        Defendants. | : | |
| - - - - - | | |
| **EVELYN REGENER,** | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5555 |
|        Defendants. | : | |
| - - - - - | | |
| **SHANNON MORRISON,** | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5556 |
|        Defendants. | : | |
| - - - - - | | |
| **ASHLEY BROADDUS, et al.,** | : | |
|         Plaintiffs, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5557 |
|         Defendants. | : | |
| - - - - - | | |

| | | |
|---|---|---|
| **WILLIAM PHELPS,** | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5558 |
|       Defendants. | : | |

- - - - -

| | | |
|---|---|---|
| **STEVEN SHEMELIA,** | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5559 |
|       Defendants. | : | |

- - - - -

| | | |
|---|---|---|
| **KATIE TISCH,** | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5560 |
|       Defendants. | : | |

- - - - -

| | | |
|---|---|---|
| **GLENDA MAXWELL,** | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| **MYLAN INC., et al.,** | : | No. 11-5617 |
|       Defendants. | : | |

## **MEMORANDUM**

**Schiller, J.**                                                                                                                  **October 25, 2011**

      A number of people died using Defendants' pain relief product and as a result Plaintiffs sued in the Philadelphia Court of Common Pleas. Plaintiffs, for the most part, are suing as individuals and as administrators of the estates of the various decedents. Defendants removed to this Court, arguing that the Defendant who made removal improper was fraudulently joined. This Court disagreed and
4

remanded all of the cases before it because the forum defendant rule prevented removal. In some of the cases pending before the Court, Defendants seek a second bite at the removal apple. In others, this is Defendants' first attempt to bring these cases to federal court. Defendants charge that the Supreme Court's recent decision in *Pliva v. Mensing*, coupled with Plaintiffs' recently amended state court complaints now renders these cases removable. The Court again disagrees and holds that all of these cases will return to state court because Defendants failed to show fraudulent joinder. Thus, for the reasons that follow, Plaintiffs' motions to remand will be granted.

I.   BACKGROUND

   A.   Facts

Mylan, Inc. ("Mylan") is a registered Pennsylvania corporation. (Original Master Long Form Compl. ¶ 2.) Mylan Pharmaceuticals, Inc. is a West Virginia corporation and is a subsidiary of Mylan. (*Id*. ¶ 3.) Mylan Technologies, Inc. is a West Virginia corporation with its principal place of business in Vermont and is also a subsidiary of Mylan. (*Id*. ¶ 4.) Mylan, Mylan Pharmaceuticals, and Mylan Technologies (collectively, the "Mylan Defendants") designed, formulated, manufactured, marketed, sold, distributed, and/or promoted the fentanyl patch. (*Id*. ¶¶ 6-10.) Fentanyl is a potent prescription painkiller. (*Id*. ¶ 14.) The fentanyl patch is a "fentanyl transdermal system patch" that comes in 25, 50, 75, and 100 microgram sizes and uses a "matrix" design. (*Id*.)

Plaintiffs' Master Long Form Complaint, filed in state court on August 15, 2011, includes claims for negligence, strict product liability, breach of implied and express warranties, and wrongful death. Plaintiffs note that not all claims asserted in the Master Long Form Complaint are asserted by all Plaintiffs, and not all claims in the Master Long Form Complaint are asserted by each Plaintiff

against each Defendant. (*Id.* ¶ 1.)

The patch, which decedents applied to their skin, was supposed to deliver a controlled rate of fentanyl over time depending on the dosage prescribed by the patient's doctor. (*Id.* ¶¶ 15, 22-23.) Although the decedents used the patch properly and as prescribed by their doctors, the Mylan Defendants' fentanyl patch delivered a deadly dose of fentanyl. (*Id.* ¶¶ 29, 31, 40.) Despite the Mylan Defendants' assertions to the contrary, Plaintiffs contend that the fentanyl patch was not a safe and effective way to alleviate chronic and severe pain. (*Id.* ¶ 35.) Rather, the product was defective because "[d]ecedents received lethal blood concentrations of fentanyl—which caused them to die of a fentanyl overdose—while using the Patch as prescribed." (*Id.* ¶¶ 41, 45.)

Plaintiffs charge that the Mylan Defendants were negligent in communicating the risks of the fentanyl patch to the public and to doctors and that had Plaintiffs' doctors been adequately warned of the products' dangers, they would not have prescribed the fentanyl patch. (*Id.* ¶ 35.) Moreover, the Mylan Defendants were aware that they were placing a defective product into the stream of commerce yet failed to disclose this information in the name of higher profits. (*Id.* ¶¶ 36-39.) The Mylan Defendants "could have (and should have) suspended sales of their inadequately-labeled and, therefore, misbranded drug until their product's label was revised to warn of these significant dangers." (*Id.* ¶ 65.) The Mylan Defendants also breached their duty to provide warnings about the dangers of their products and to safeguard the health of the public. (*Id.* ¶¶ 71-72.) Furthermore, because the Mylan Defendants produced a generic drug, federal law required them to ensure that the labeling for their fentanyl patches had accurate information and to communicate important safety information about their products to the medical community and consumers. (*Id.* ¶ 73-74.) Moreover, Plaintiffs allege that the Mylan Defendants failed to properly and adequately inform the medical

community and the FDA of the risks associated with its products and their failure was a factual and proximate cause of decedents' death. (*Id*. ¶¶ 76-79.)

According to Plaintiffs, the Mylan Defendants were negligent in that they could have reasonably foreseen that the design of their product was defective because the products: (1) lacked a rate control membrane; and/or (2) used fentanyl rather than buprenorphine. (*Id*. ¶¶ 49-50, 52.) A safer alternative design existed which could have reduced the danger of patient overdoses. (*Id*. ¶¶ 54-57, 59, 61.) The negligent design of the Mylan Defendants was a factual and proximate cause of decedents' deaths. (*Id*. ¶ 64.)

The strict liability claim is based on allegations that the Mylan Defendants produced products that were defective and not suitable or safe for their intended purpose at the time they were manufactured by the Mylan Defendants. (*Id*. ¶ 95.) The fentanyl patches contained manufacturing and design defects and were defective because they lacked adequate warnings and instructions. (*Id*. ¶¶ 96-98.) "The Patches in question malfunctioned during normal use, delivered fentanyl to Decedents at a faster rate and in greater concentration than they were designed to give, thereby delivering fatal doses of fentanyl to Decedents." (*Id*. ¶ 102.)

### B. Procedure

The first cases before this Court involved five individuals who died while using pain-treatment patches: David Doran, Kelley Reese, Martin Lalka (brought by Colleen Grigsby), Stephen Apple, and Christopher Tisch. Those five actions were consolidated before this Court for resolution of their motions to remand on December 14, 2010. Defendants filed a global opposition on January 7, 2011. The Court remanded the cases on January 19, 2011. Additional cases were filed subsequent to the Court's remand order.

In September 2011, the Mylan Defendants removed all nineteen cases now before this Court. For two of these cases, the Mylan Defendants' notice of removal was filed within thirty days of receipt of the original complaint. For the remaining cases, including those that were previously removed, the notice of removal was not filed within thirty days of the filing of the original complaint but was filed within thirty days of the filing of Plaintiffs' Original Master Long Form Complaint. After Plaintiffs filed a motion to remand, the nineteen cases were consolidated before this Court for purposes of deciding the remand motion. The Mylan Defendants filed a response to Plaintiffs' request for remand.

## II. STANDARD OF REVIEW

A defendant seeking to invoke federal diversity jurisdiction may only remove a case to federal court if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b). The removal statute should be strictly construed and all doubts should be resolved in favor of remand. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995); *see also Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996). The removing defendant bears the burden of demonstrating that jurisdiction is appropriate. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939); *Boyer v. Snap-on Tools Corp.*, 93 F.2d 108, 111 (3d Cir. 1990). "Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a heavy burden of persuasion." *Boyer*, 913 F.2d at 111 (internal quotations omitted).

When faced with a possible fraudulent joinder, a court will accept a plaintiffs' well-pleaded

8

allegations as true and resolve "any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992)). Courts may look beyond the pleadings to determine whether joinder was fraudulent; however, a court will not "step from the threshold jurisdictional issue into a decision on the merits." *Id*. at 219. "The joinder of a party should be deemed fraudulent only if the claims are 'wholly insubstantial and frivolous.'" *West v. Marriot Hotel Servs., Inc.*, Civ. A. No. 10-4130, 2010 WL 4343540, at *2 (E.D. Pa. Nov. 2, 2010) (quoting *In re Briscoe*, 448 F.3d at 217). The Third Circuit has emphasized that proper joinder for jurisdictional purposes is a lower bar than would be required for a claim to survive a motion to dismiss, or a motion for summary judgment. *See id.* (citing *Batoff*, 977 F.2d at 852 and *Boyer*, 913 F.2d at 111).

### III.    DISCUSSION

#### A.    The Propriety of the Mylan Defendants' Removal

A defendant may remove any civil action brought in state court over which the district courts of the United States have original jurisdiction. 28 U.S.C. § 1441(a). However, if subject matter jurisdiction is premised on diversity of citizenship, the forum defendant rule states that a case is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action [was] brought." 28 U.S.C. § 1441(b). Because Mylan is a citizen of Pennsylvania, which is where Plaintiffs have sued, the cases before the Court are not removable. But, if Plaintiffs fraudulently joined Mylan, the Court could disregard the citizenship of Mylan, and these cases could be removed based on diversity.

District courts may disregard a defendant's citizenship for jurisdictional purposes upon a

showing of fraudulent joinder. *Briscoe*, 448 F.3d at 216. Joinder is fraudulent if either a reasonable basis in fact or colorable ground supporting the claim, or a good-faith intention to prosecute the action against the defendant in question is lacking. *Id*. (citing *Abels*, 770 F.2d at 32). But, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Briscoe*, 448 F.3d at 217.

    *1.     Timing of removal*

Ordinarily, a defendant must remove a case within thirty days of receipt of the initial pleading. 28 U.S.C. § 1446(b). However, "[i]f a case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

Plaintiffs argue that these cases are not removable because they took no voluntary act that would allow the Mylan Defendants a second opportunity to remove, or an opportunity to remove outside of the thirty-day window provided by the removal statute. (Pls.' Mot. to Remand and Br. in Supp. [Pls.' Br.] at 8-10.) Because Plaintiffs merely refined their claims against Mylan and did not withdraw them, the cases remain unremovable. (*Id*. at 11-18.) Finally, even if the Mylan Defendants complied with the procedural aspects of the removal statute, they still cannot prove that Mylan was fraudulently joined because Plaintiffs still have colorable claims notwithstanding *Mensing*. (*Id*. at 20-33.)

The Mylan Defendants contend that they have complied with the procedural requirements of the removal statute; they filed the removal notices within thirty days of receiving Plaintiffs'

Original Master Long Form Complaint, which qualifies as "a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." (Defs.' Consol. Resp. in Opp'n to Pls.' Mot. to Remand at 13-19.) Having complied with the timing provision of 28 U.S.C. § 1446(b), Plaintiffs' claims against Mylan, which "reek[] of desperation" and fly in the "face of unambiguous United States Supreme Court precedent to the contrary" are no longer colorable. (*Id*. at 11.) Because "*Mensing* preempts each and every iteration and variation of a failure-to-warn claim that [Plaintiffs] have contrived," the Pennsylvania citizenship of Mylan can be disregarded. (*Id*. at 17.) The Court disagrees.

    2.    *Pleadings*

Plaintiffs' claims against Mylan may or may not be desperate, but the Court concludes that a state court should decide their ultimate merits.

On June 23, 2011, the Supreme Court issued its decision in *Pliva v. Mensing*, 131 S. Ct. 2567. The Supreme Court held in *Mensing* that federal drug regulations applicable to generic drug manufacturers directly conflicted with, and thus preempted, state law failure-to-warn claims for inadequate warning labels on generic drugs. The bulk of these cases were filed prior to the *Mensing* decision. However, on August 15, 2011, Plaintiffs filed an Original Master Long Form Complaint in the Court of Common Pleas. In early September 2011, the Mylan Defendants filed their notices of removal.[1]

Plaintiffs argue that a case can only become removable by the voluntary action of a plaintiff

---

[1] The Mylan Defendants note that the notices of removal in the *Holk* and *Morrison* matters before this Court were filed within thirty days of service of the original complaints, and thus the timing issue of the removal based on the filing of the Original Master Long Form Complaint is not relevant to those cases. Plaintiffs do not address this contention.

11

and that a subsequent development in case law, such as the Supreme Court's ruling in *Mensing*, does not make a case that was initially not subject to removal, removable. The Court understands the Mylan Defendants' arguments for removal are more nuanced than simply whether a Supreme Court decision alone can suffice to permit a successive removal petition. According to the Mylan Defendants, Plaintiffs amended their complaint to address a Supreme Court decision that held that their failure-to-warn claims are preempted. Thus, the amended complaint, coupled with the change in the legal landscape, now makes it ascertainable that the cases have become removable.

Plaintiffs rightly note that courts have consistently held that the decision of another court is not an "other paper" which can render a case removable.[2] *See Pennsylvania v. Tap Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 527 (E.D. Pa. 2005) ("Although the Third Circuit has not considered whether a subsequent Supreme Court opinion constitutes an 'other paper' under section 1446(b), the majority rule from other district courts is that unrelated opinions fall outside this language."); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1332-34 (M.D. Fla. 1999) ("Many courts have examined and rejected the defendants' argument that an order entered in another case may constitute 'an order or other paper' pursuant to § 1446(b)."); *Holiday v. Travelers Ins. Co.*, 666 F. Supp. 1286, 1289-90 (W.D. Ark. 1987) (rejecting argument that a Supreme Court decision qualifies as an "other paper" under removal statute).

But, if the Original Master Long Form Complaint is an amended complaint, the cases holding

---

[2] The Third Circuit has permitted removal in a narrow set of circumstances based on a subsequent Supreme Court decision, provided that the order, "as manifested through a court decision," is sufficiently related to a pending case to trigger § 1446(b). *Doe v. Am. Red Cross*, 14 F.3d 196, 202 (3d Cir. 1993). An order is sufficiently related if it: (1) came from a court superior in the same judicial hierarchy; (2) was directed at a particular defendant; and (3) expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues. *Id.* at 203.

that a court decision is not an "other paper" for removal purposes miss the mark. And that is how this Court will view Plaintiffs' recent Original Master Long Form Complaint. With the exception of the two cases in which the Mylan Defendants filed a notice of removal within thirty days of service of the original complaints, they elected to remain in state court. Upon review of the Original Master Long Form Complaint, the Court believes the Mylan Defendants have overstated the changes contained in that document. Nevertheless, the state court seems to have treated it as an amended complaint and the Court will treat Plaintiffs' latest filing in state court as more than a mere "refinement" of their arguments in light of *Mensing*. Regardless, because remand is required even if the Original Master Long Form Complaint is an amended pleading under 28 U.S.C. § 1446(b), the Court's decision is not that the Mylan Defendants procedurally waived their removal rights by waiting more than thirty days to file a notice of removal. As explained below, being able to point to an "amended pleading" which may serve as a basis for removal does not unlock the doors to the federal courthouse.

### B. The Mylan Defendants Fail to Satisfy Their Burden for Remand

If the timing element is removed from the Court's attention, should Plaintiffs be deprived of their choice of forum? That is, what if the *Mensing* decision had existed before Plaintiffs filed their original complaints? Could the Mylan Defendants remove these cases to federal court?

No. Admittedly, the law has changed. But this change in the law does not affect Defendants ability to remove. Prior to *Mensing*, failure-to-warn claims brought under state law based on inadequate warning labels proceeded against generic drug manufacturers. The Supreme Court in *Mensing* halted such claims as preempted by federal drug regulations. The flaw in the Mylan Defendants' argument is their assumption that somehow a "landmark" Supreme Court ruling lessens

the standard to prove fraudulent joinder. The Mylan Defendants may ultimately win the war, but they are stuck fighting on the turf Plaintiffs selected.

For some of these cases, this is the second attempt at removal by the Mylan Defendants. Generally, "the first remand, because it establishes the law of the case, 'may be revisited only when intervening events justify that step.'" *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) (quoting *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999)). The law of the case doctrine applies to a successive removal by the same party on the same grounds if nothing of significance has changed since the prior removal. *Bank of N.Y. Mellon v. Ribadeneira*, Civ. A. No. 11-1433, 2011 WL 3843817, at *1 (D. Ariz., Aug. 30, 2011) (collecting cases). A successive removal petition following remand is permissible, however, if subsequent pleadings or conduct of the parties brings a once unremovable case within the grasp of the removal jurisdiction of the federal courts. *Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir. 2009); *In re Diet Drugs*, 282 F.3d 220, 232 n.8 (3d Cir. 2002).

Here, from a removal perspective, this case is the same as it ever was. The same Plaintiffs have sued the same Defendants, alleging that the Mylan Defendants made and sold a defective product that killed people. Plaintiffs even bring the same legal claims and seek the same relief as sought previously. Whether or not some or all of their claims are preempted based on the Supreme Court's decision in *Mensing* is a legal issue based on preemption that can be addressed by a state court. *See Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307, 1309 (M.D. Fla. 2000) ("Ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court."); *cf. Caterpillar v. Williams*, 482 U.S. 386, 393 (1987) (noting that a case may not be removed based on a federal defense, including preemption, even if that is the only question at issue).

The Mylan Defendants must show that Plaintiffs' bid for recovery from Mylan is not only weak, but practically "a clear legal impossibility." *West*, 2010 WL 4343540, at *3. "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." *Id*. (citing *Boyer*, 913 F.2d at 111.) The differences between the Master Original Long Form Complaint recently filed by Plaintiffs and the various complaints filed by the individual plaintiffs do not make these cases removable. The difference in the law as a result of *Mensing* strengthens the Mylan Defendants' arguments for dismissal. That, however, is not the test for fraudulent joinder. *See Lyall v. Airtran Airlines, Inc.*, 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000) ("Simply because we come to believe that, at the end of the day, a state could would dismiss the allegations against a defendant for failure to state a cause of action does not mean that the defendant's joinder was fraudulent.") Furthermore, the Mylan Defendants' theory is inconsistent with the clear indication that federal courts possess limited jurisdiction and that doubts are to be resolved in favor of remand. *See Brown*, 575 F.3d at 326; *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (noting that policy against removal has always been "rigorously enforced"). *Mensing* merely provides a framework for the state court to adjudicate Plaintiffs' claim; it is not a hook that lands these cases in federal court. The Mylan Defendants face a heavy burden; they must show the Pennsylvania law would not recognize any of the claims asserted against Mylan. *See Route 27, LLC v. Getty Petroleum Mktg., Inc.*, Civ. A. No. 10-3080, 2011 WL 1256618, at *4 (D.N.J. Mar. 30, 2011).

Plaintiffs offer a number of reasons why *Mensing* does not foreclose their failure-to-warn claims. Of course, the Mylan Defendants disagree. But, based on the allegations in the Original Long Form Complaint, Plaintiffs have stated a reasonable basis for their claims against Mylan. Thus, this Court need not address the ultimate outcome of Plaintiffs' claims following *Mensing* because a state

15

court is the proper forum for that issue. Furthermore, at a minimum, Plaintiffs charge that the Mylan Defendants negligently designed their fentanyl patch, thereby causing injury to Plaintiffs. (Original Master Long Form Compl. ¶ 64.) Negligent design defect claims remain actionable under Pennsylvania law. *Lance v. Wyeth*, 4 A.3d 160, 165 (Pa. Super. Ct. 2010) (noting that strict liability design defect claim differs from negligent design defect claim and that Pennsylvania recognizes no exemption or special protection from negligent design defect claims for prescription drug makers). This Court's previous remand opinion discussed the possibility of Mylan being liable for negligence and the Mylan Defendants are not entitled to seek a reconsideration of that decision under the guise of a removal notice. It will suffice for the Court to conclude, once again, that Plaintiffs' allegations satisfy this Court that their claim against Mylan for a negligent design defect (a recognized and non-preempted claim under Pennsylvania law) is not wholly insubstantial and frivolous.

**IV.     CONCLUSION**

The Supreme Court decision in *Mensing* provided the Mylan Defendants a possible basis for the preemption of some of Plaintiffs' claims; it did not make these cases removable because Plaintiffs continue to press colorable claims against Mylan. The Mylan Defendants cannot meet the stringent standard required for removal here and thus this Court grants the motion to remand.[3]

An Order consistent with this Memorandum will be docketed separately.

---

[3] In at least one case, *Reese*, the decedent is from Pennsylvania. Because Mylan is a citizen of Pennsylvania, this Court lacks subject matter jurisdiction given the absence of complete diversity. The forum defendant rule that serves as the basis for remand of the bulk of these cases is a procedural, not a jurisdictional rule. *See Hutchins v. Bayer Corp.*, Civ. A. No. 08-640, 2009 WL 192468, at *6 (D. Del. Jan. 23, 2009).